DA 07-0340

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 382

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

DANIEL JOSEPH MARTZ,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC 2006-048
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Roberta R. Zenker, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  June 4, 2008

Decided:  November 18, 2008

Filed:

_____
                     Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Daniel Joseph Martz appeals his conviction and sentence in the Sixth Judicial District Court, Park County, for partner or family member assault. We affirm.

## BACKGROUND

¶2    The procedural history of this appeal is somewhat convoluted, involving multiple charges of partner or family member assault ("PFMA") in three separate criminal cases, all filed in the Sixth Judicial District Court. At the outset, it is useful to note that a first or second conviction of PFMA is considered a misdemeanor, while a third or subsequent conviction is considered a felony. *See* § 45-5-206(3)(a), MCA (2005); § 45-2-101(23), (42), MCA. Furthermore, Martz was convicted of PFMA in 2002; and for the purpose of determining the number of Martz's prior PFMA convictions, the 2002 conviction was his *first*.

¶3    On January 24, 2006, the State filed an information in Cause No. DC 06-09 charging Martz with the following:

> Count I: partner or family member assault, *second* offense, a *misdemeanor*, allegedly committed on or about December 23-24, 2005.

> Count II: partner or family member assault, *third* offense, a *felony*, allegedly committed on or about December 25-26, 2005.

> Count III: assault with a weapon, a felony, allegedly committed on or about December 25-26, 2005.

¶4    On May 4, 2006, the State filed an information in Cause No. DC 06-48 (the instant action) charging Martz with the following:

> Count I: partner or family member assault, *fourth* offense, a *felony*, allegedly committed on or about April 10, 2006.

2

Martz entered a plea of not guilty to this charge on May 15. On June 1, the District Court entered an order setting trial for December 19, 2006.

¶5     On August 31, 2006, the State moved to dismiss, without prejudice, the charges pending in DC 06-09. The State provided two grounds: (1) "[a] material witness is not currently available" and (2) "[i]nterests of justice." The District Court granted the motion that same day.

¶6     On September 20, 2006, the State re-filed the charges previously dismissed in DC 06-09. The case was given a new cause number: DC 06-103. The District Court set trial for December 20, 2006. Thus, Martz was scheduled to be tried on the charge of PFMA, *fourth* offense, the day before he was to be tried on the charges of PFMA, *second* offense and *third* offense.

¶7     On December 18, 2006, Martz filed a motion in DC 06-48 to dismiss the charge of PFMA, fourth offense, for lack of a speedy trial. Martz explained, first, that while the State had charged this offense as a felony, "in substance, it is actually a misdemeanor." Martz reasoned that because he had only one prior PFMA conviction (in 2002), his trial on the instant charge on December 19 could only be his *second* PFMA conviction. As noted, a second conviction of PFMA is a misdemeanor.

¶8     Based on the theory that the PFMA charge in DC 06-48 was a misdemeanor, Martz argued that the speedy trial statute applied. That statute provides:

> After the entry of a plea upon a misdemeanor charge, the court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed, with prejudice, if a defendant whose trial has not been

3

> postponed upon the defendant's motion is not brought to trial within 6 months.

Section 46-13-401(2), MCA. Martz observed that he had entered his plea of not guilty on May 15, 2006, and that he had never asked for any postponements or trial delays. Thus, Martz argued, he should have been brought to trial by November 15, 2006, and the failure to do so required dismissal of the charge.

¶9 The State responded to Martz's motion, asserting that the PFMA offense in DC 06-48 was properly charged as a felony. The State noted that the charges of PFMA, second offense and third offense, had been re-filed in DC 06-103. The State did not deny that Martz was scheduled to be tried on his "fourth" offense *before* being tried on his "second" and "third" offenses; however, the State claimed that charging him in DC 06-48 with a fourth offense was correct given the chronology of when the offenses occurred. (The second and third offenses were based on events in December 2005, while the fourth offense was based on events in April 2006.) The State posited that Martz could be charged in separate actions based on the number of "offenses" he allegedly had committed, as opposed to the number of "convictions" actually reflected in his criminal record. The State also argued that if Martz were found guilty in DC 06-48 of a "fourth" offense but was not found guilty the next day in DC 06-103 of either the "second" or "third" offense, then his "fourth" offense could simply be reduced to a misdemeanor at the time of sentencing. In this connection, the State requested "that the sentencing in [DC 06-48], should a jury convict, be held off until after the outcome of the trial in DC 06-103."

4

¶10     The District Court heard additional arguments on Martz's motion during a hearing the morning of trial. Defense counsel reiterated Martz's contention that "[t]here is no circumstance that the State can identify, today, where Mr. Martz will be convicted of anything other than a misdemeanor." Counsel asserted that "[the instant charge], if he's convicted, will be his second conviction," which constitutes a misdemeanor. Counsel argued that the way the State "labels" an offense in a charging document should not control with respect to the speedy trial statute; in other words, form should not prevail over substance. Thus, since there was "[no] conceivable outcome, today, other than a misdemeanor," counsel asserted that DC 06-48 fell within the purview of the speedy trial statute and had to be dismissed.

¶11     The court, however, focused on the fact that the State had charged the offense as a felony, and the court opined that it was not critical for the misdemeanor and felony offenses to be tried in chronological order. The court indicated that if the State failed to obtain guilty verdicts on either of the PFMA charges in DC 06-103, then any guilty verdict the State obtained in DC 06-48 would be treated as a misdemeanor for sentencing purposes. The District Court therefore denied Martz's motion.

¶12     A jury found Martz guilty in DC 06-48 of PFMA, "fourth" offense, on December 19, 2006. The following day, a trial was held in DC 06-103. At the close of the State's case-in-chief, the District Court granted a motion to dismiss Count II (PFMA, "third" offense) and Count III (assault with a weapon) for insufficient evidence. A jury thereafter found Martz guilty under Count I (PFMA, "second" offense).

¶13 Shortly after the presentence investigation report was filed in DC 06-48, but prior to sentencing, Martz filed a sentencing memorandum challenging the probation/parole officer's recommendation of a five-year commitment to the Montana State Prison. Martz argued that the guilty verdict in DC 06-48 was his second "conviction" of PFMA; that this conviction, therefore, had to be treated as a misdemeanor; and that his sentence, accordingly, could not be more than one year imprisonment in the county jail. In response, the State asserted that irrespective of the sequence in which the cases were tried, Martz presently stood guilty of PFMA, second offense, committed in December 2005, and PFMA, third offense, committed in April 2006. The State requested "concurrent sentencing" on the two offenses. The District Court agreed with the State's argument and denied Martz's motion to treat the guilty verdict in DC 06-48 as a "second conviction" for sentencing purposes.

¶14 The District Court sentenced Martz in both DC 06-48 and DC 06-103 on March 19, 2007. The court first imposed sentence in DC 06-103: thirty days in the Park County Detention Center, to run concurrently with any sentence in DC 06-48. The court then imposed sentence in DC 06-48: two years at the Montana Department of Corrections, with one year suspended. Martz now appeals.

## ISSUES

¶15 We restate the issues raised by Martz, as follows:

1. Did the District Court lack jurisdiction over the charge in DC 06-48?

2. Did the District Court err in denying Martz's motion to dismiss for lack of a speedy trial under § 46-13-401(2), MCA?

6

3. Did the District Court impose an illegal sentence in DC 06-48?

## STANDARDS OF REVIEW

¶16    Martz's challenge to the District Court's jurisdiction is an issue of law, which this Court determines de novo. *See Stanley v. Lemire*, 2006 MT 304, ¶ 52, 334 Mont. 489, ¶ 52, 148 P.3d 643, ¶ 52; *City of Missoula v. Gillispie*, 1999 MT 268, ¶ 10, 296 Mont. 444, ¶ 10, 989 P.2d 401, ¶ 10; *State v. Spotted Blanket*, 1998 MT 59, ¶ 18, 288 Mont. 126, ¶ 18, 955 P.2d 1347, ¶ 18.

¶17    Whether a misdemeanor charge must be dismissed under the speedy trial statute requires an interpretation and application of § 46-13-401(2), MCA. This Court reviews for correctness a district court's interpretation and application of a statute. *State v. Bullman*, 2007 MT 288, ¶ 7, 339 Mont. 461, ¶ 7, 171 P.3d 681, ¶ 7. However, any factual findings underlying the application of § 46-13-401(2), MCA, to the case at hand are reviewed under the clearly erroneous standard. *See State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, ¶ 119, 167 P.3d 815, ¶ 119. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the fact-finder misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *See Ariegwe*, ¶ 119; *State v. Weaver*, 2008 MT 86, ¶ 9, 342 Mont. 196, ¶ 9, 179 P.3d 534, ¶ 9.

¶18    Lastly, we review criminal sentences that include at least one year of actual incarceration for legality. *Ariegwe*, ¶ 174. We confine our review to determining whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable sentencing statutes, and whether

7

the court adhered to the affirmative mandates of the applicable sentencing statutes. *Ariegwe*, ¶ 174; *State v. Stephenson*, 2008 MT 64, ¶ 15, 342 Mont. 60, ¶ 15, 179 P.3d 502, ¶ 15. This determination is a question of law and, as such, our review is de novo. *Stephenson*, ¶ 15.

## DISCUSSION

¶19 ***Issue 1. Did the District Court lack jurisdiction over the charge in DC 06-48?***

¶20 Martz contends that the District Court lacked jurisdiction over the single PFMA offense charged in this case. The State notes that this issue is being raised "for the first time on appeal." As a general rule, this Court will not address an issue raised for the first time on appeal. *State v. Mackrill*, 2008 MT 297, ¶ 47, 345 Mont. 469, ¶ 47, 191 P.3d 451, ¶ 47; *State v. LaPier*, 1998 MT 174, ¶ 9, 289 Mont. 392, ¶ 9, 961 P.2d 1274, ¶ 9, *overruled in part on other grounds*, *Slavin v. State*, 2005 MT 306, ¶ 12, 329 Mont. 424, ¶ 12, 127 P.3d 350, ¶ 12. Jurisdictional issues, however, are an exception to this general rule; indeed, it is well-established that the question of a court's jurisdiction may be raised at any time, even by the court sua sponte. *See* § 46-13-101(3), MCA; *State v. West*, 2008 MT 338, ¶ 19, 346 Mont. 244, ¶ 19, 194 P.3d 683, ¶ 19; *Stanley*, ¶¶ 30-32; *State v. Finley*, 2003 MT 239, ¶ 13, 317 Mont. 268, ¶ 13, 77 P.3d 193, ¶ 13; *LaPier*, ¶ 9. Accordingly, we will consider Martz's jurisdiction argument.

¶21 Jurisdiction is the power and authority of a court to hear and decide the case or matter before it. *Stanley*, ¶ 30; *Finley*, ¶ 13. This power and authority is conferred on courts only by the Constitution or statutes adopted pursuant to the Constitution. *Pinnow v. Montana State Fund*, 2007 MT 332, ¶ 20, 340 Mont. 217, ¶ 20, 172 P.3d 1273, ¶ 20.

8

With respect to criminal matters, a court's jurisdiction depends on whether the offense is classified as a felony or a misdemeanor, which in turn depends on the maximum sentence that may be imposed for committing the crime. *See State v. Campbell*, 191 Mont. 75, 78-79, 622 P.2d 200, 202 (1981); § 45-1-201(1), MCA; § 45-2-101(23), (42), (49), MCA.

¶22 In pertinent part, the Montana Constitution confers on district courts "original jurisdiction in all criminal cases amounting to felony" and "such additional jurisdiction as may be delegated by the laws of the United States or the state of Montana." Mont. Const. art. VII, § 4(1). Furthermore, "[o]ther courts may have jurisdiction of criminal cases not amounting to felony and such jurisdiction concurrent with that of the district court as may be provided by law." Mont. Const. art. VII, § 4(3). Finally, justice courts have "such original jurisdiction as may be provided by law," but they do not have "trial jurisdiction in any criminal case designated a felony except as examining courts." Mont. Const. art. VII, § 5(2). Thus, while felonies may be tried only in district courts, misdemeanors may be tried in district courts, "[o]ther courts" (e.g., justice courts), or both district courts and other courts, as determined by the Legislature.

¶23 Section 3-5-302, MCA, sets out the original jurisdiction of district courts. Among other cases, district courts have original jurisdiction in "all criminal cases amounting to felony" and in "all cases of misdemeanor not otherwise provided for." Section 3-5-302(1)(a), (d), MCA. The Legislature has "provided for" jurisdiction over a number of misdemeanor cases. Of relevance to this discussion, justice courts have "concurrent jurisdiction with district courts of all misdemeanors punishable by a fine exceeding $500

9

or imprisonment exceeding 6 months, or both."[1]  Section 3-10-303(1)(c), MCA. Misdemeanor PFMA falls under the latter category.  *See* § 45-5-206(3)(a)(i), (ii), MCA (providing that upon a first or second conviction of PFMA, the offender may be fined up to $1,000 and imprisoned in the county jail for a maximum term of one year).

¶24  Accordingly, based on these provisions, it appears that district courts have original jurisdiction over felony PFMA charges and that justice courts and district courts have concurrent jurisdiction over misdemeanor PFMA charges.  Nevertheless, Martz presents an argument that the District Court lacked jurisdiction in this case.  He begins with the premise that the single count of PFMA charged by the State was, in substance, a misdemeanor because he had only one prior PFMA conviction on the day the information was filed and on the day the offense was tried.  Based on this premise, he contends that the District Court's jurisdiction in this case depends on the jurisdictional provisions governing misdemeanors.  Next, Martz acknowledges our statement in *State v. Brockway*, 2005 MT 179, 328 Mont. 5, 116 P.3d 788, that "district courts have concurrent jurisdiction with justice courts over misdemeanor charges of Partner or Family Member Assault."  *Brockway*, ¶ 11 (citing § 3-10-303(1)(c), MCA).  However, he argues that this statement, while correct as applied to the factual circumstances at issue in *Brockway*, is overbroad and inapplicable to the case at hand.  Moreover, according to Martz, § 3-10-303, MCA, is not particularly "germane" to issues of district court jurisdiction since that provision outlines the criminal jurisdiction of *justice courts*.  Instead, Martz

---

[1] These are sometimes referred to as "high misdemeanors."  *See e.g. State v. Koehn*, 1998 MT 234, ¶ 13 n. 1, 291 Mont. 87, ¶ 13 n. 1, 966 P.2d 143, ¶ 13 n. 1; *State v. Kinney*, 230 Mont. 281, 282, 750 P.2d 436, 436-37 (1988).

turns to subsections (1)(d) and (2) of § 3-5-302, MCA. As noted, the former states that district courts have original jurisdiction in "all cases of misdemeanor not otherwise provided for." Section 3-5-302(1)(d), MCA. In Martz's view, the "otherwise provided for" misdemeanors are those listed in subsection (2). That provision, in turn, states that district courts have "concurrent original jurisdiction" with justice courts in the following misdemeanor cases:

> (a) misdemeanors arising at the same time as and out of the same transaction as a felony or misdemeanor offense charged in district court;
> (b) misdemeanors resulting from the reduction of a felony or misdemeanor offense charged in the district court; and
> (c) misdemeanors resulting from a finding of a lesser included offense in a felony or misdemeanor case tried in district court.

Section 3-5-302(2), MCA.

¶25 Based on the foregoing, Martz points out that *Brockway* involved a multi-count information charging two counts of misdemeanor PFMA and two counts of felony PFMA. *See Brockway*, ¶ 3. Thus, according to Martz, although *Brockway* was correctly decided, it should have been grounded in § 3-5-302(2)(a), MCA, not § 3-10-303(1)(c), MCA. In the case at hand, by contrast, Martz contends that the District Court did not have jurisdiction over the misdemeanor PFMA charge because it was charged in a single-count information, which is not a recognized basis of jurisdiction in § 3-5-302(2), MCA. In essence, Martz maintains that district courts have only pendent jurisdiction over misdemeanors as provided for in § 3-5-302(2), MCA, and that they do not have jurisdiction over a "single, stand-alone misdemeanor."

11

¶26   In response, the State rejects Martz's assertion that the charge in DC 06-48 was a misdemeanor. But assuming, for the sake of argument, that it was a misdemeanor, the State argues that the District Court had jurisdiction pursuant to our reasoning in ¶ 11 of *Brockway*. The State does not address the fact that *Brockway* involved a multi-count information, while the information filed in DC 06-48 contained a single misdemeanor count (under Martz's theory). Nevertheless, we agree with the State that the District Court had jurisdiction over the charge.

¶27   Assuming, for the moment, that the charge in DC 06-48 was, in substance, a misdemeanor, we cannot accept Martz's interpretation of the pertinent statutes. Section 3-5-302(1)(d), MCA, grants the district courts original jurisdiction in "all cases of misdemeanor not otherwise provided for." This language implicitly instructs us to determine whether jurisdiction over the misdemeanor at issue is "provided for" elsewhere in the Code. If it is not otherwise provided for, then the district courts have jurisdiction over the misdemeanor. Section 3-10-303(1)(c), MCA, in turn, states that the justice courts have "concurrent jurisdiction with district courts of all misdemeanors punishable by a fine exceeding $500 or imprisonment exceeding 6 months, or both." Thus, although high misdemeanors are "provided for" by § 3-10-303(1)(c), MCA, which grants jurisdiction over those offenses to the justice courts, this provision simultaneously states that the jurisdiction is "concurrent" with the district courts. It follows, then, that district courts have original jurisdiction over a misdemeanor charge of PFMA, even one brought in a single-count information. Notably, we reached this conclusion in *State v. Koehn*, 1998 MT 234, 291 Mont. 87, 966 P.2d 143, albeit with no analysis. *See Koehn*, ¶ 13 n. 1.

¶28 Moreover, his statutory interpretation aside, we cannot accept Martz's premise that the PFMA charge in DC 06-48 should have been designated a "misdemeanor" for jurisdictional purposes. " '[T]he jurisdiction of a court depends on the state of facts existing at the time it is invoked.' " *State v. Tomaskie*, 2007 MT 103, ¶ 22, 337 Mont. 130, ¶ 22, 157 P.3d 691, ¶ 22 (brackets in *Tomaskie*) (quoting 22 C.J.S. *Criminal Law* § 222 (2006)). "For the determination of the court's jurisdiction at the commencement of the action . . . , the offense shall be designated a felony or misdemeanor *based upon the maximum potential sentence which could be imposed by statute*." Section 45-1-201(1), MCA (emphasis added). Here, when the instant action was commenced on May 4, 2006, Martz had one prior PFMA conviction and there were two PFMA charges pending in DC 06-09. The information in DC 06-09 had been filed on January 24, 2006, and it does not appear that Martz had filed any motions challenging that information for lack of probable cause or other defects. Thus, in light of the facts existing at the time the information was filed in DC 06-48, including the possibility of two convictions in DC 06-09, "the maximum potential sentence which could be imposed" was the punishment set out in § 45-5-206(3)(a)(iv), MCA, for "a third or subsequent conviction"—namely, a fine of not less than $500 and not more than $50,000, and imprisonment for a term not less than thirty days and not more than five years. This potential sentence falls in the "felony" category. *See* § 45-2-101(23), MCA. Accordingly, for jurisdictional purposes, the PFMA offense charged in this case was properly designated a felony. (In this regard, the State correctly points out that Martz never filed a motion to dismiss for lack of probable cause to support a felony charge in the instant action.) Lastly, because district courts

13

have original jurisdiction in all criminal cases amounting to felony, Mont. Const. art. VII, § 4(1); § 3-5-302(1)(a), MCA, we hold that the District Court had jurisdiction over the charge in DC 06-48.

¶29  ***Issue 2.  Did the District Court err in denying Martz's motion to dismiss for lack of a speedy trial under § 46-13-401(2), MCA?***

¶30  Section 46-13-401(2), MCA, provides:

>   After the entry of a plea upon a misdemeanor charge, the court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed, with prejudice, if a defendant whose trial has not been postponed upon the defendant's motion is not brought to trial within 6 months.

In *State v. Bertolino*, 2003 MT 266, 317 Mont. 453, 77 P.3d 543, we observed that this statute "mandates dismissal of a misdemeanor charge if it is not brought to trial within six months, where the defendant has not asked for a postponement and where the State has not shown good cause for the delay.  The statute itself serves as the sole standard of whether 'good cause' for the delay has been shown." *Bertolino*, ¶ 13 (citations and some internal quotation marks omitted).

¶31  Here, Martz again proceeds on the premise that the single count of PFMA charged in DC 06-48 was, in substance, a misdemeanor because he had only one prior PFMA conviction on the day he was brought to trial on the charge.  Martz then points out that he entered a plea of not guilty on May 15, 2006; that he did not seek any postponements of his trial; and that his December 19, 2006 trial date was more than seven months after he entered his plea.  Furthermore, citing *Bertolino*, Martz observes that the State did not argue "good cause" for the delay in the District Court, but rather took the position that

14

since Martz had been properly charged with felony PFMA, the speedy trial statute did not apply. Martz contends, therefore, that the District Court erred in denying his motion.

¶32    The State initially responds that because Martz was charged with felony PFMA, "the entry of a plea upon a misdemeanor charge" as contemplated by § 46-13-401(2), MCA, never occurred in this case. The State goes on to argue that Martz's speedy trial motion was essentially an untimely motion to dismiss the felony charge for lack of probable cause. The State does not, however, provide any argument on the merits of Martz's speedy trial claim.

¶33    We concluded under Issue 1 that the PFMA charge in DC 06-48 was properly designated a felony for jurisdictional purposes on May 4, 2006, when the information was filed. That analysis, however, does not control for resolution of the speedy trial issue. Rather, we hold that the determination of the speedy trial statute's applicability to a given offense must be made based on the facts which exist at the time the motion is made and considered by the court, as demonstrated below.

¶34    We begin with two critical clarifications. First, under the PFMA statute, "[a]n offender *convicted* of a second offense under this section shall be fined not less than $300 or more than $1,000 and be imprisoned in the county jail not less than 72 hours or more than 1 year." Section 45-5-206(3)(a)(ii), MCA (emphasis added). Second, "in order for there to be a *conviction*, a sentence must be imposed." *State v. Tomaskie*, 2007 MT 103, ¶ 12, 337 Mont. 130, ¶ 12, 157 P.3d 691, ¶ 12 (emphasis added).

¶35    Defense counsel argued during the pretrial hearing in the District Court that "[t]here is no circumstance that the State can identify, today, where Mr. Martz will be

15

convicted of anything other than a misdemeanor." That statement, however, was not exactly correct, given the foregoing rules. Although he was found guilty by a jury on December 19, 2006, of the single count of PFMA in the instant action (DC 06-48), he was not "convicted" of that charge until March 19, 2007, when sentence was imposed. *Tomaskie*, ¶ 12; *see also* § 46-1-202(7), (11), (25), MCA. In the meantime, the State obtained a guilty verdict on one of the two PFMA counts in DC 06-103. The District Court imposed sentence on that guilty verdict (the one in DC 06-103) first, and it thus became Martz's "second" PFMA "conviction"—a misdemeanor. Accordingly, when Martz was sentenced immediately thereafter in DC 06-48, that offense became his "third" PFMA "conviction"—a felony. (As noted below, this analysis essentially resolves Martz's illegal-sentence claim under Issue 3.)

¶36 On December 18, 2006, when Martz made his motion to dismiss for lack of a speedy trial, a number of outcomes were possible with respect to the pending charges. First, he would be found not guilty in DC 06-48, which would moot the speedy trial issue. Second, he would be found guilty in DC 06-48 and would be found guilty in DC 06-103 of at least one of the two PFMA charges. In that situation, the District Court could sentence him first in DC 06-103 to a misdemeanor sentence and then in DC 06-48 to a felony sentence. (That is exactly what occurred here.) Third, he would be found guilty in DC 06-48 and would be found not guilty in DC 06-103 on both of the PFMA charges. In that situation, the charge in DC 06-48 could only have been his second conviction, and the District Court accordingly would have had to reduce it to a misdemeanor. The District Court seemed to suggest during the pretrial hearing that in

16

this situation, it could then have imposed a misdemeanor sentence. We disagree and hold that the court could not have done so. Rather, in this particular situation, where the charge in DC 06-48 was reduced to a misdemeanor, the District Court would have been bound to reconsider Martz's speedy trial motion. If the motion had merit, the court would have been required to grant it, vacate the conviction, and dismiss the charge with prejudice.

¶37    To summarize, then, we hold that under the somewhat bizarre circumstances that existed on December 18 when the District Court considered Martz's speedy trial motion, the following course of action was proper. First, since Martz on that date stood accused in DC 06-103 of two counts of PFMA, and since one of those charges plausibly could serve as his "second" PFMA "conviction" for purposes of sentencing him in the instant action, it was appropriate to treat the instant charge as a felony for purposes of the speedy trial statute and, thus, to deny Martz's speedy trial motion on the ground that the speedy trial statute did not apply. Critical to this conclusion is the fact that Martz never challenged the charge in this case (PFMA, "fourth offense, a felony") for lack of probable cause. Yet, notably, between August 31, 2006, when the District Court dismissed without prejudice the two PFMA charges in DC 06-09 (second and third offenses) and September 20, 2006, when the State re-filed those charges in DC 06-103, Martz (1) had only one prior PFMA conviction and (2) stood accused of only one PFMA offense.

¶38    However, summary denial of Martz's speedy trial motion was contingent upon the State's obtaining a guilty verdict on at least one of the two PFMA charges in DC 06-103. Accordingly, if the State failed to do so on December 20, then the District Court was

17

required to reconsider Martz's motion under § 46-13-401(2), MCA, and, if meritorious, to grant it.

¶39 Before concluding, we note the State's contention that the speedy trial statute could not *ever* have applied to Martz in this case because he was charged with felony PFMA and, thus, never entered "a plea upon a *misdemeanor* charge" as contemplated by § 46-13-401(2), MCA (emphasis added). We agree with Martz, however, that this argument "elevates form over substance." We hold that the speedy trial statute could have applied here because Martz was charged in a single-count information with an offense that had the potential, depending on the outcome of the trial in DC 06-103, of being reduced to a misdemeanor.

¶40 ***Issue 3. Did the District Court impose an illegal sentence in DC 06-48?***

¶41 The District Court sentenced Martz to two years at the Montana Department of Corrections, with one year suspended. Martz contends that this sentence is illegal because he "had only one conviction on the day of the event which gave rise to No. 48, and only one conviction on the day it was tried and reduced to judgment." In other words, Martz posits that "the conviction in No. 48 can never be anything other than a second conviction." As such, he argues that the District Court, at most, could have imprisoned him "in the county jail not less than 72 hours or more than 1 year." Section 45-5-206(3)(a)(ii), MCA.

¶42 We disagree. As explained in ¶ 35, at the time Martz was sentenced on the instant charge on March 19, 2007, he had just been sentenced on the charge in DC 06-103. The charge in DC 06-103 was Martz's second PFMA conviction. (Recall that a "conviction"

18

exists once sentence is imposed. *See Tomaskie*, ¶¶ 9-12.) Accordingly, when Martz was sentenced in the instant action, the offense was properly treated as his third PFMA conviction.

> On a third or subsequent conviction for partner or family member assault, the offender shall be fined not less than $500 and not more than $50,000 and be imprisoned for a term not less than 30 days and not more than 5 years. . . . If the term of imprisonment exceeds 1 year, the person shall be imprisoned in the state prison.

Section 45-5-206(3)(a)(iv), MCA. Whenever a person has been found guilty of an offense upon a verdict of guilty, a sentencing judge may suspend execution of sentence, impose a term of incarceration at a state prison to be designated by the Department of Corrections, or impose a commitment to the Department of Corrections. Section 46-18-201(2), (3)(c), (3)(d)(i), MCA.

¶43 Here, the District Court sentenced Martz to two years at the Department of Corrections, with one year suspended. This sentence is legal under the foregoing statutes.

## CONCLUSION

¶44 We hold that the District Court had jurisdiction over the PFMA charge in this case, that the District Court correctly denied Martz's motion to dismiss for lack of a speedy trial, and that Martz's sentence is legal.

¶45 As a final observation, when charges involve offenses that escalate in severity depending upon the number of the offense, the sorts of "Which came first, the chicken or the egg?" and "Who's on first?" issues raised in this appeal can typically be avoided by thoughtful charging and trial scheduling. While such considerations may appear as simply scheduling or housekeeping issues for prosecutors and trial courts, they can, as

19

here, result in appeals presenting legal mazes that require an inordinate amount of time to sort through and resolve. Given this Court's limited time and resources, we hope that prosecutors and the trial courts will keep these considerations in mind in future cases involving charges of the type at issue here.

¶46    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS